IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JOSHUA LAUMANN,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>CHAD SLATER, et al.,<br><br>　　　　　　　Defendants. | **MEMORANDUM DECISION<br>AND ORDER**<br><br>Case No.  1:09-cv-0138-CW<br><br>Judge Clark Waddoups |

## INTRODUCTION

Joshua Laumann brings this 42 U.S.C. §§ 1983, 1988 action against Defendants Sergeant Chad Slater, Deputy Issac Herrera, Deputy Corey Stark, and Officer Anna Covington for their alleged use of excessive force during Mr. Laumann's booking and detention at the Weber County Corrections Facility on February 21, 2009.  Mr. Laumann brings this challenge under the Fourth and Fourteenth Amendments.[1]  Defendants have moved the court for summary judgment against Mr. Laumann's action.  The court holds that based upon the undisputed material facts, a reasonable jury could find that Defendants acted sadistically and maliciously and without a penological purpose in beating, kicking, and breaking the arm of Mr. Laumann during his pretrial detention. The motion is therefore DENIED.

## FACTUAL BACKGROUND

On February 21, 2009, Mr. Laumann was arrested by the Ogden City Police Department on a misdemeanor charge and an outstanding misdemeanor warrant, and then transported to the Weber

---

[1]　　　Defendants argue that the Fourth Amendment claim is inapplicable to detainees and is therefore misplaced. Plaintiff fails to offer an argument to counter this assertion.  As stated *infra*, excessive force for a detainee is properly brought under the Fourteenth Amendment and not the Fourth Amendment.  *See* (Compl., ¶ 45) (Dkt. No. 1).

County Corrections Facility.  (Compl., ¶ 12-13) (Dkt. No. 1).  Mr. Laumann was placed in a cell pending the completion of the booking process, as were three of his friends whom were also booked at the same time.  (Compl., ¶ 14) (Defs.' Mem. Supp. Mot. Summ. J., ii) (Dkt. No. 29).  After the inmates ate breakfast, they were removed from their cells so that the booking process could be completed.  (Defs.' Mem. Supp. Mot. Summ. J., iii).  During this time, the four inmates were talking, laughing, and speaking so loudly that the jail staff could not conduct their shift change briefing.  (Defs.' Mem. Supp. Mot. Summ. J., iv).  The four inmates were told repeatedly to quiet down and were then ordered to return to their cells.  (Defs.' Mem. Supp. Mot. Summ. J., iv-v).  Mr. Laumann was told to enter holding cell number B 16.  *Id.* at v.  Mr. Laumann complied with the order.  (Gordy Decl. ¶ 30, Oct. 21, 2011) (Dkt. No. 43).  Deputies Stark and Herrera escorted or followed Mr. Laumann to the cell.  As Plaintiff entered the cell, he turned and threw a piece of paper towards Deputy Stark.  (Laumann Decl. 51-52, Aug. 24, 2010) (Dkt. No. 40-1, 4).  Deputy Stark acknowledged in his report that he was aware that Laumann had thrown something at him, meaning that he did not interpret the motion as an attempted punch.  (Stark Rep. 3) (Dkt. No. 40-2).  Nevertheless, Deputies Stark, Herrera and Sergeant Slater rushed into the cell, hitting him in the head with a fist and kneeing him in the gut, causing him to fall half way to the floor.  (Laumann Dec. ¶¶ 33, Apr. 12, 2010) (Dkt. No. 41).  Mr. Laumann did not resist in any way.  (Laumann Dec. ¶¶ 33, Apr. 12, 2010).

Officer Slater gained control of Mr. Laumann using a wrist lock and arm hold and decided to move him to a "hot cell" in the pre-booking area.  (Stark Dep. 67:16, Dec. 20, 2010) (Dkt. No. 29-6).  Because the officers were twisting and pulling Mr. Laumann's arm, it made it difficult for him to walk.  (Laumann Decl. 88:8-12, Aug. 24, 2010).  During this time, Mr. Laumann pled with the guards, assuring them that he was not fighting them and would do whatever they said.  (Laumann Decl. 89:6-9, Aug. 24, 2010).  Also making it difficult for him to walk was the fact that

his boots were untied and his pants were falling down.  (Laumann Decl. 88:3-5, Aug. 24, 2010). This is evident from the video.[2]  Furthermore, particularly where Officer Covington was behind Mr. Laumann, at least one of the officers was aware that this was the cause of his walking difficulty.

After the officers brought Mr. Laumann to the "hot cell," they ordered him to get down on his belly.  (Laumann Decl. 54:13-19, Aug. 24, 2010).  Despite this order, the officers were actually holding Mr. Laumann up, thus preventing him from getting down on the ground.  (Laumann Decl. 84:15-85:5, Aug. 24, 2010), (Laumann Decl. ¶ 41, Apr. 12, 2010).  The officers were therefore giving him commands that they knew he could not comply with and then struck him repeatedly for non-compliance.  *Id.*  Sometime during this event, Deputy Covington at least grabbed and pulled on Mr. Laumann's leg while he was in the "hot cell."  (Covington Dep. 153:12) (Dkt. No. 29-7). Deputy Herrera also administered one or more knee strikes to the upper portion of Plaintiffs right leg, and Deputy Stark did the same to Mr. Laumann's buttocks.  (Herrera Dep. 181:25-182:1, Nov. 16 & Dec. 6, 2010) (Dkt. No. 29-5) (Stark Dep. 87:10-12, Dec. 6, 2010) (Dkt. No. 29-6).  In addition, a guard kicked or stomped on Mr. Laumann's lower back right above his tailbone, again telling him to "[g]et on [his] fucking belly."  (Laumann Decl. ¶ 41, Apr. 12, 2010).  While demanding that Mr. Laumann get on the ground, one of the officers broke Mr. Laumann's arm by hitting or kicking it.  (Laumann Decl. 55:5-12, Aug. 24, 2010).

## ANALYSIS

### I.  STANDARD OF REVIEW

Defendants' motion for summary judgment will be granted if they show that "there is no genuine dispute as to any material fact and [that they as the movants are] entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A 'material fact' is one which could have an impact on the

---

[2]     File 04000005, Camera 6 "Booking Counter 2," from 4:53:45-4:53:52 and file 04000002, Camera 3 "Booking Counter" from 04:53:49 to 4:53:54.

outcome of the lawsuit, while a 'genuine issue' of such a material fact exists if a rational jury could find in favor of the non-moving party based on the evidence presented." *Chasteen v. UNISIA JECS Corp.*, 216 F.3d 1212, 1216 (10th Cir. 2000).  Although "[t]he movant has the burden of showing that there is no genuine issue of fact" in moving for summary judgment, "the plaintiff is not thereby relieved of his own burden of producing . . . evidence that would support a jury verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  Likewise, the role of the Court is not to weigh the evidence, but to "determine whether there is a genuine issue for trial." *Id*. at 249.

## II.  EXCESSIVE FORCE STANDARD

The United States Supreme Court has stated that the standard for an excessive force challenge is neither singular nor generic, but depends on the "specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Conner*, 490 U.S. 386, 393-94 (1989). "In most instances, that will be either the Fourth Amendment's prohibition against unreasonable seizure of the person, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct." *Id.* at 394. "Where . . . the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, [the standard] is most properly characterized as one invoking the protections of the Fourth Amendment." *Id.*  In the context of an incarcerated prisoner, however, the question is whether the governmental action constituted cruel and unusual punishment as forbidden by the Eighth Amendment. *Id. Whitley v. Albers*, 475 U.S. 312, 319 (1986).  Similarly, in cases of a pre-trial detainee, it is the "Due Process Clause [that] governs a pretrial detainee's claim . . . [although] the Eighth Amendment standard provides the benchmark for such claims." *Sawyer v. Green*, 316 F. App'x. 715, 717 n.2 (10th Cir. 2008) (quoting *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)); *see also Fuentes v. Wagner*, 206 F.3d 335, 344 (3rd Cir. 2000) (reiterating that

pretrial detainees are entitled to at least as much protection as convicted prisoners, so the protections of the Eighth Amendment would seem to establish a floor of sorts).

In evaluating excessive force claims under the Eighth Amendment, the Tenth Circuit has explained:

> Ordinarily, an excessive force claim involves two prongs: (1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind.

*Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003) (internal citations omitted).

### A. The Objective Harm

"The objective component of an excessive force claim is contextual and responsive to contemporary standards of decency." *Id.* In reviewing the objective prong, the Tenth Circuit has previously looked to the injury as determinant. *See Romel Abu Fakher v. Bode*, 175 F. App'x 179, 182 (10th Cir. 2006) (finding that the allegation of a broken finger is sufficient to meet the test's objective prong); *Escobar v. Zavaras*, 1998 U.S. App. LEXIS 11689 at *9 (10th Cir. June 2, 1998) (finding that a broken finger was sufficient injury for an Eighth Amendment claim); *cf. Marshall v. Milyard*, 415 F. App'x 850, 852 (10th Cir. 2011) (finding that the plaintiff's allegation of being needlessly grabbed by the arm with such force to cause bruising was insufficient under the objective prong); *Norton v. City of Marietta*, 432 F.3d 1145, 1154 (10th Cir. 2005) ("Whether defendants' use of [pepper] spray was objectively harmful enough to violate plaintiff's Eighth Amendment rights turns in part on how long plaintiff was sprayed and whether he was adequately irrigated afterwards or left to suffer unnecessarily."). It is undisputed that Defendants, either individually or as a group, broke Plaintiff's arm. Such an action is undoubtedly objectively harmful enough to establish a constitutional violation. This first prong is therefore met.

### B.  **Defendants' Subjective Intent**

In contrast to the objective prong, "[t]he subjective element of an excessive force claim turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  *Cochran*, 339 F.3d at 1212.  The Supreme Court has further directed that "[i]n determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response."  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  "[W]here no legitimate penological purpose can be inferred from a prison employee's alleged conduct . . . the conduct itself constitutes sufficient evidence that force was used maliciously and sadistically for the very purpose of causing harm."  *Giron v. Corrections Corp. of Am.*, 191 F.3d 1281, 1290 (10th Cir. 1999) (quoting *Whitley*, 475 U.S. at 320-21).

The difficulty in evaluating this prong is the fact that Defendants appear to misunderstand that on a motion for summary judgment the moving party must show that it is entitled to summary judgment based on undisputed and material facts.  In their reply, Defendants argue the facts at length, ignoring that it is not the court's role to weigh the evidence, but to determine if Defendants' motion should succeed as a matter of law.  Regardless of Defendants understanding of the events that transpired, the court must construe the evidence in the light most favorable to Mr. Laumann as the non-moving party.  Accordingly, the court concludes that the evidence is sufficient for a jury to find the following facts.

After being ordered back to his cell, Mr. Laumann walked to holding cell B16 at a normal pace as he was ordered to do.  Once in the cell, Plaintiff threw a piece of paper towards Officer Stark.  Officer Stark knew that it was a piece of paper.  The guards then came at him aggressively, hit him in the head and kneed him in the gut.  The guards then dragged him out of the cell and

6

across the booking area, cussing and yelling at him to walk although they knew that he could not comply with their orders because his pants were falling down and his boots were untied. Plaintiff told the guards that they were hurting him, to which they responded, "[t]hat fucking sucks for you." Once inside the cell, Defendants were yelling at him to "[g]et on your fucking belly" while simultaneously keeping his torso elevated off the floor by the guards holding his arms. Plaintiff repeatedly screamed, "I can't because you have me by my fucking arms," but the guards continued to hold him above the ground while guards hit and kicked him, and stomped on him in his lower back. Plaintiff was struck repeatedly. Finally, one guard hit his upper arm with something, causing it to break.

In analyzing these facts following the Supreme Court's guidance in *Hudson*, the court finds that a reasonable jury could find that the need for Defendants to apply force to Mr. Laumann for throwing a piece of paper was small. A reasonable jury could similarly find that the officers did not reasonably perceive a threat once Mr. Laumann was in his cell, and "failed to take any efforts to temper the severity of a forceful response." *Hudson*, 503 U.S. at 1. A jury could further find that Defendants acted improperly in forcing Mr. Laumann to walk down the hall without resistance, while Officer Covington was aware that Mr. Laumann's pants were falling down and his shoes untied. Lastly, a jury could also find that Defendants were holding Mr. Laumann up despite ordering him to get down on his belly, and acted maliciously and sadistically in kicking and beating him, thus breaking his arm.[3] *See Whitley v. Albers*, 475 U.S. 312, 321 (1986) ("From such considerations inferences may be drawn as to whether the use of force could plausibly have been

---

[3]     There is some question regarding whether Deputy Covington's participation in the events of February 21, 2009 would permit a jury to find that she used excessive force. In the February 21, 2009 booking video, it is clear that she did not touch Plaintiff any earlier than the time he was taken into the "hot cell." Defendants argue that while in the "hot cell," she attempted to pull his leg out from under him to assist in taking him to the ground. (Dkt. No. 29, 24.) While undisputed, it is not clear if she had a further role in the breaking of Plaintiff's arm. Because she was out-of-view of the camera and in the room with the other Defendants at the approximate time that Plaintiff was injured, a jury could find that she did the striking to Plaintiff's arm. Defendants' motion for summary judgment as applied to Deputy Covington is likewise denied.

thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.").

### III. QUALIFIED IMMUNITY

Defendants assert the affirmative defense of qualified immunity.  Having asserted the defense, Plaintiff bears the burden of showing "(1) that the [Defendants'] actions violated a constitutional or statutory right and (2) that the right allegedly violated [was] clearly established at the time of the conduct at issue." *Romero v. Brd. Of County Comm'rs*, 60 F.3d 702, 704 (10th Cir. 1995).  As previously explained, Defendants fail to present such material and undisputed facts that demonstrate that Plaintiff's constitutional right was not violated.  The last question, therefore, is whether this right was clearly established at the time of the conduct at issue.  In explaining this prong, the Tenth Circuit has stated:

> Ordinarily, we say that for a rule to be clearly established there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains. However, because excessive force jurisprudence requires an all-things-considered inquiry with careful attention to the facts and circumstances of each particular case, there will almost never be a previously published opinion involving exactly the same circumstances.  We cannot find qualified immunity wherever we have a new fact pattern.  Indeed, the Supreme Court has warned that officials can still be on notice that their conduct violates established law even in novel factual circumstances.  The [Hope v. Pelzer, 536 U.S. 730, 741 (2002)] decision shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional.

*Casey v. City of Federal Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007) (citations omitted).

As previously explained, *supra*, the Tenth Circuit has found that breaking a detainee's finger without a "legitimate penological purpose" is "evidence that force was used maliciously and sadistically for the very purpose of causing harm."  *Giron v. Corrections Corp. of Am.*, 191 F.3d 1281, 1290 (10th Cir. 1999) (quoting *Whitley*, 475 U.S. at 320-21).  Similarly, Defendants have failed to forward any such penological purpose for ordering a compliant detainee to get on his belly

while prohibiting him from complying with the order, and then beating him to the point of breaking his arm.  Such conduct, even if not specifically found in this Circuit's case law, is sufficiently established because there were "no substantial grounds for a reasonable officer to conclude that there was legitimate justification" for the alleged conduct.  *See Holland ex. rel. Overdorff v. Harrington*, 268 F.3d 1179, 1193 (10th Cir. 2001).  Indeed, these articulations of the law have existed long before February 21, 2009.  Accordingly, Defendants' affirmative defense for qualified immunity fails.

## IV. OTHER OUTSTANDING MOTIONS

There are a number of other motions outstanding at this time, which the court will now deny.  Plaintiffs' motions to strike are DENIED as moot.  (Dkt. Nos. 36, 38, 49, 58.)

Defendants also move to strike various statements of Ms. Villareal, Ms. Gordy, and Mr. Laumann.  (Dkt. No. 65.)  The court did not rely on the challenged statements of Ms. Villareal or Ms. Gordy.  Defendants' argument that certain of Mr. Laumann's statements were inconsistent with his prior statements and with the video is rejected.  (Dkt. No. 66, 17.)  This contention is largely centered on Defendants' misunderstanding of the definition of "dragged."  Indeed, what happened to Mr. Laumann may be properly categorized as "dragged" because the word does not require that the target person be physically unable to walk.  Furthermore, Defendants offer no evidence that Mr. Laumann's knowledge of the events surrounding his own broken arm were gained from other witnesses.  (Dkt. No. 66, 16-17.)  Whether he copied others' articulations of the event is a matter that weighs towards credibility and therefore better left to the jury.  Defendants' motion to strike is therefore DENIED.  (Dkt. No. 65.)  Defendants' motion for extension of time is also DENIED as moot.  (Dkt. No. 51.)

**CONCLUSION**

For the reasons stated herein, Defendants' motion for summary judgment (Dkt. No. 28) and motion to strike (Dkt. No. 65) are DENIED.  The remaining motions (Dkt. Nos. 36, 38, 49, 51, 58) are DENIED as moot.

DATED this 1st day of June, 2012.

BY THE COURT:

Clark Waddoups
United States District Judge